THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| JUAN PABLO RICO LOPEZ, | ) | |
| | ) | |
| *Plaintiff,* | ) | No. 26 C 2597 |
| v. | ) | |
| | ) | Chief Judge Virginia M. Kendall |
| LAKESHORE RECYCLING | ) | |
| SYSTEMS, LLC, | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

**OPINION AND ORDER**

Plaintiff Juan Pablo Rico Lopez sued Defendant Lakeshore Recycling Systems, LLC ("LRS"), alleging disability discrimination and retaliatory discharge in violation of federal and state law. (Dkt. 1). LRS now moves to compel arbitration of Rico Lopez's claims. For the reasons set forth below, LRS's Motion to Compel Arbitration and Stay Proceedings [10] is denied.

**BACKGROUND[1]**

Rico Lopez was employed at LRS from 2010 to August 8, 2024 as a transfer driver. (Dkt. 1 ¶¶ 11, 19). On August 5, 2024, Rico Lopez was involved in a vehicle accident while working. (*Id.* ¶ 12). He sustained minor injuries that prevented him from returning to work until August 8, 2024. (*Id.* ¶¶ 15, 18). LRS terminated Rico Lopez when he returned to work for "dishonesty and failure to report an injury." (*Id.* ¶¶ 19, 22). Rico Lopez claims that his termination constitutes

---

[1] The Court may consider pleadings, exhibits, and affidavits regarding the arbitration agreement in question when deciding a motion to compel. *See Kass v. PayPal Inc.*, 75 F.4th 693, 697-99 (7th Cir. 2023); *Lupo Futures, LLC v. Wedbush Sec., Inc.*, 2024 WL 3493877, at *1 (N.D. Ill. July 22, 2024).

unlawful retaliation and disability discrimination. (*Id.* ¶¶ 28-55). LRS asserts that Rico Lopez must arbitrate these claims pursuant to a mandatory arbitration provision in its employee handbook. (Dkt. 11).

LRS provides all prospective and current employees with copies of its employee handbook (the "Handbook") and disseminates new copies when the Handbook is updated. (Ex. 1, Dkt. 11-1 ¶¶ 6-7). LRS updated the Handbook on January 4, 2024, and distributed it to employees electronically by uploading it to ADP, its human resources management system. (*Id.* ¶ 7). The updated Handbook contains an arbitration provision under a section titled "Dispute Resolution Policy." (Ex. 1, Dkt. 11-1 ¶ 8); (Ex. A, Dkt. 11-1 at 33-34). The Dispute Resolution Policy is located on pages 28 and 29 of the 53-page Handbook. (Ex. A, Dkt. 11-1 at 33-34). The Policy states:

> Except as provided in this policy, all disputes regarding or arising out of your employment with the Company or termination of your employment (including any dispute relating to the validity, scope, or applicability or this Dispute Resolution policy) must be determined by arbitration before one neutral arbitrator in the county of the JAMS (Judicial and Mediation Services) office nearest to your principal employment location.

(Ex. A, Dkt. 11-1 at 28). With respect to the enforceability of the Policy, the Handbook states:

> Your agreement to and compliance with this policy are conditions of your employment. Unlike every other policy in this Handbook, this Dispute Resolution policy is an enforceable contract which cannot be modified unless in writing signed by both the CEO and you. You agree that your employment (or your continued employment) with the Company is adequate consideration for the promises made in this policy.

(*Id.*).

Employees were notified of the updated Handbook via emails and messages through the ADP portal. (Dkt. 11-1 ¶ 7). LRS also informed the employees at Rico Lopez's worksite about the updated Handbook in weekly staff meetings, telling them that printed copies, in English and

Spanish, were available in the lunchroom. (Ex. 1, Dkt. 18-1 ¶¶ 17-19). The Spanish and English versions included the same substantive content. (*Id.* ¶ 18).

All employees were required to electronically acknowledge receipt of the Handbook and agree to comply with the policies therein. (Ex. 1, Dkt. 11-1 ¶ 10). Employees were made aware of this requirement through the ADP portal and at in-person, weekly meetings. (*Id.* ¶ 7); (Ex. 1, Dkt. 18-1 ¶ 19). LRS also instructed managers and supervisors to follow up with employees who did not complete the electronic acknowledgment. (Ex. 1, Dkt. 11-1 ¶ 7). To submit the electronic acknowledgment, each employee had to log into ADP, open the Handbook, and review it in its entirety. (*Id.* at ¶ 12); (Ex. 1, Dkt. 18-1 ¶ 8). After an employee viewed all pages of the Handbook, an automatic message would appear asking the employee to input their full name and check a box confirming that they reviewed the Handbook. (Ex. 1, Dkt. 11-1 ¶ 10); (Ex. 1, Dkt. 18-1 ¶¶ 8-12). Once the employee entered their name and checked the confirmation box, ADP generated an electronic signature page memorializing the acknowledgment. (*Id.*).

The parties dispute whether Rico Lopez received and acknowledged the Handbook. According to LRS, it provided Rico Lopez with a copy of the Handbook through the ADP portal, which he could access through his account. (Ex. 1, Dkt. 11-1 ¶ 11); (Ex. 1, Dkt. 18-1 ¶ 7). It also asserts that Rico Lopez had access to the lunchroom at his worksite where he was told that printed copies of the English and Spanish versions of the Handbook were available. (Ex. 1, Dkt. 18-1 ¶ 17). LRS further asserts that Rico Lopez executed the electronic acknowledgment of the Handbook on February 22, 2024. (*Id.* ¶ 12); (Ex. B, Dkt. 11-1 at 60). LRS provided the Court with a copy of Rico Lopez's alleged acknowledgment:

| **ADP** verifies the Electronic Signature of this document | |
|---|---|
| **SIGNATURE** | |
| **Signer Name:** | Juan Rico |
| **User ID:** | JRico1@lrsrecycle |
| **Date Electronically Signed:** | Feb 22, 2024 12:33 PM EST |
| **File Name:** | lrs_employee_handbook_final_2024-adpdms-100.pdf |
| **Display Name:** | 2024 LRS Teammate Handbook |

(Ex. B, Dkt. 11-1 at 60). Additionally, LRS submitted declarations from Dr. Robert Rustman (Vice President of Human Resources at LRS) and Julie DeHoyos (Area Human Resources Business Partner at LRS), who claim that the only way the electronic signature page could have been generated was by Rico Lopez completing all steps of the electronic acknowledgment process himself. (Ex. 1, Dkt. 11-1 ¶ 12); (Ex. 1, Dkt. 18-1 ¶¶ 8, 14-15).

Rico Lopez admits that he received emails from LRS's Human Resources ("HR") in January 2024 stating that a new Handbook was available and that employees should review and acknowledge the Handbook through the ADP portal. (Dkt. 17-1 ¶ 4). According to Rico Lopez, he informed HR before and after receiving these emails that he could not access his ADP account. (*Id.*). He denies receiving any paper or electronic copies of the Handbook and maintains that he did not review it on the ADP portal or otherwise. (*Id.* ¶¶ 4, 6). He also denies completing the electronic acknowledgment of the Handbook on the ADP portal. (*Id.* ¶ 4). Additionally, Rico Lopez states in his declaration that he was born in Mexico, taught himself English, has difficulty understanding anything anything in English more than simple words and sentences, and has no formal education or training in computers, IT, or email systems. (Dkt. 17 at 1); (Dkt. 17-1 ¶ 3).

Rico Lopez also claims that he was asked to meet with HR in February 2024 to sign "new rules for workers." (*Id.* ¶ 5). In the meeting, a female HR representative "directed [him] to a pad and asked [him] to sign [his] name," which he did. (*Id.*). Rico Lopez asserts that he did not review

4

the Handbook or any other document before signing on the pad. (*Id.*). In her declaration, DeHoyos asserts that the electronic acknowledgment process did not include any option for an employee to physically sign a document with a finger or stylus. (Ex. 1, Dkt. 18-1 ¶ 15). She also claims that she told employees that they could talk to her about any issues related to the Handbook, but that she did not use or possess an electronic tablet or pad in her work with LRS. (*Id.* ¶¶ 16, 20).

After Rico Lopez filed his Complaint, LRS reminded him of his agreement to arbitrate any employment claims. (Dkt. 11 at 2). Rico Lopez asserts that he did not agree to arbitrate any dispute or legal claims regarding his employment with LRS. (Dkt. 17 at 2). LRS now moves to compel arbitration. (Dkt. 11).

## **LEGAL STANDARD**

The Federal Arbitration Act ("FAA") provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. . . ." 9 U.S.C. § 2. Upon petition by a party, a court may compel arbitration if it is satisfied that a valid arbitration agreement exists and covers the dispute at issue. *See* 9 U.S.C. § 4; *see also Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010). If "the making of the arbitration agreement" is in dispute, however, "the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4; *see also Deputy v. Lehman Bros.*, 345 F.3d 494, 509-10 (7th Cir. 2003).

The FAA reflects a strong federal policy favoring arbitration and requires courts to place arbitration agreements on equal footing with other contracts and enforce them according to their terms. *See Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 505-06 (2018); *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1059-60 (7th Cir. 2018). Any doubts concerning the scope of arbitrable issues are resolved in favor of arbitration. *See James v. McDonald's Corp.*, 417 F.3d 672, 676-77 (7th Cir. 2005) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).

A motion to compel arbitration is evaluated under a summary-judgment standard. *See Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002). A court may determine as a matter of law whether parties entered into an arbitration agreement only if "no genuine dispute of material fact exists as to the formation of the agreement." *Wallrich v. Samsung Elecs. Am., Inc.*, 106 F.4th 609, 618 (7th Cir. 2024). The party opposing arbitration must identify a genuine dispute of material fact, and the court must credit that party's evidence and draw all reasonable inferences in its favor. *Tinder*, 305 F.3d at 735. If a genuine dispute exists regarding the formation of the arbitration agreement, the issue must proceed to trial. *Id.*; *see also* 9 U.S.C. § 4.

## **DISCUSSION**

A party seeking to compel arbitration must establish: (1) an enforceable arbitration agreement exists; (2) a dispute has arisen between the parties that falls within the scope of the arbitration agreement; and (3) there has been a refusal by the opposing party to proceed to arbitration. *See Kass v. PayPal Inc.*, 75 F.4th 693, 700 (7th Cir. 2023); *Gen. Ass'n of Regular Baptist Churches v. Scott*, 549 F. App'x. 531, 533 (7th Cir. 2013); *A.D.*, 885 F.3d at 1063. Arbitration agreements are contracts governed by state contract law. *Dr. Robert L. Meinders, D.C. v. UnitedHealthcare, Inc.*, 800 F.3d 853, 857 (7th Cir. 2015); *Kass*, 75 F.4th at 701. Under Illinois[2] law, a valid contract requires an offer, acceptance, and consideration. *Melena v. Anheuser-Busch, Inc.*, 219 Ill. 2d 135, 151 (2006). The existence of a contract, its terms, and the parties' intent are questions of fact to be determined by a trier of fact. *Kass*, 75 F.4th at 701 (citing *Arbogast v. Chicago Cubs Baseball Club, LLC*, 2021 IL App (1st) 210526, ¶ 19). "Only when no factual

---

[2] The parties agree that Illinois law applies here. (Dkt. 11 at 4); (Dkt. 17 at 3). Accordingly, the Court does not need to do a choice-of-law analysis. *See Ginski v. Ethos Seafood Grp., LLC*, 2024 WL 4265249, at *3 n.1 (N.D. Ill. Sept. 23, 2024).

dispute exists does the issue of a contract's existence become a question of law for the court." *Id.* (citing *Hany v. General Electric Co.*, 221 Ill. App. 3d 390, 397 (1991))*.*

LRS argues there is a valid arbitration agreement because Rico Lopez received and acknowledged the Handbook, which contains a Dispute Resolution Policy mandating arbitration of employment disputes. (Dkt. 11 at 5). In response, Rico Lopez contends that he never received, read, or acknowledged the Handbook and never agreed to the terms of the Dispute Resolution Policy. (Dkt. 17 at 2). The Court finds that there is a genuine dispute of material fact as to whether an arbitration agreement exists. Accordingly, the court denies LRS's motion and need not address the parties' arguments regarding scope of arbitrability, waiver, or unconscionability.

To establish that its Handbook created a valid contract, LRS must show: (1) the language of the Handbook contains a promise clear enough that an employee would reasonably believe that an offer has been made; (2) the Handbook was disseminated to the employee in such a manner that the employee was aware of its contents and reasonably believed it to be an offer; and (3) the employee accepted the offer by commencing or continuing to work after learning of the Handbook. *See Duldulao v. St. Mary of Nazareth Hosp. Ctr.*, 115 Ill.2d 482, 490 (1987). An employee may be bound by an arbitration agreement even without signing a separate arbitration document if the arbitration provision is incorporated into a handbook that constitutes a valid contract. *See Del Valle v. Bond Cap., Ltd.*, at *1 (N.D. Ill. June 26, 2008); *Ginski v. Ethos Seafood Grp., LLC*, 2024 WL 4265249, at *4 (N.D. Ill. Sept. 23, 2024) (holding that the parties would be bound to arbitrate pursuant to an arbitration provision contained in an employee handbook if all *Dulduloa* elements are met).

The Court finds that there is a genuine dispute of fact as to the second *Duldulao* requirement—whether Rico Lopez received the Handbook and was aware of its contents. *See Kass*,

7

75 F.4th at 704 (holding that a genuine dispute of fact was created by plaintiff's denial of receipt of the agreement containing the arbitration provision). First, LRS provides what it claims to be an electronic signature page completed by Rico Lopez through the ADP portal acknowledging the Handbook. (Ex. B, Dkt. 11-1 at 60). It also asserts, through the affidavits of DeHoyos and Rustman, that the electronic signature page could only have been generated through the ADP system if Rico Lopez signed in to the portal using his unique employee credentials, flipped through each page of the handbook, input his full name into the acknowledgment form, and checked a box confirming that he reviewed the document. (Ex. 1, Dkt. 11-1 ¶¶ 12-14); (Ex. 1, Dkt. 18-1 ¶¶10-15). According to both declarants, this process precludes the possibility that anyone other than Rico Lopez generated the electronic signature. (Dkt 11-1 at 14); (Dkt. 18-1 at 10-15). Rico Lopez does not dispute that the acknowledgment page exists. (Dkt. 17 at 5-6). Nonetheless, he avers in his declaration that he did not have access to the ADP portal and did not receive or acknowledge the Handbook through ADP. (Dkt. 17-1 ¶ 4).

Additionally, while Rico Lopez concedes that he was asked to sign "for the new handbook," he states that he signed his name on a "pad" without reviewing the Handbook or any other document. (*Id.* ¶ 5). According to DeHoyos, however, she was the only HR employee at Rico Lopez's worksite and "did not have at the time, an electronic tablet or pad that [she] used for [her] work at LRS." (Ex. 1, Dkt. 18-1 ¶¶ 5, 16). She further asserts that the electronic acknowledgment process did not include an option for an employee to physically sign an electronic record. (*Id.* ¶ 15). These conflicting statements only create further ambiguity as to whether the Handbook was effectively disseminated under *Duldulao*. The parties also dispute whether Rico Lopez received or acknowledged a paper copy the Handbook. While DeHoyos asserts that printed copies of the Handbook were available in employee lunchrooms, (Ex. 1, Dkt. 18-1 ¶¶ 5, 16), LRS admits that it

did not "physically hand a hard copy of the Handbook" to Rico Lopez. (Dkt. 18 at 11). Further, Rico Lopez denies receiving the Handbook in any form, printed or electronic. (Dkt. 17-1 ¶ 6).

Given the conflicting evidence put forth by the parties, there is a genuine dispute of fact as to whether Rico Lopez received a printed or electronic copy of the Handbook, whether he reviewed and acknowledged it, and, ultimately, whether he agreed to the arbitration provision it contains. *See, e.g., Kolarev v. Am. Express Co.*, 2026 WL 925748, at *3 (N.D. Ill. Apr. 6, 2026) (finding a genuine dispute of fact as to whether the plaintiff agreed to an arbitration provision contained in a cardmember agreement for a business account where the plaintiff disputed that the account belonged to him). To be sure, LRS provides compelling evidence that Rico Lopez completed the electronic acknowledgement confirming his receipt and review of the Handbook. Yet, he swears under penalty of perjury that he did not. The Court is not allowed to "weigh conflicting evidence, resolve swearing contests, determine credibility, or ponder which party's version of the facts is most likely to be true." *Craftwood II, Inc. v. Generac Power Sys., Inc.*, 63 F.4th 1121, 1129 (7th Cir. 2023). As such, contrary to LRS's assertions, Rico Lopez's declaration denying receipt or acknowledgment of the Handbook is enough to create a genuine dispute of material fact as to the existence of an arbitration agreement. *See Kass*, 75 F.4th at 704 ("When a party denies signing a contract . . . the denial is an assertion of fact. And far from being conclusory, such a denial can create a genuine dispute of fact."); *Hoffman v. Citibank, N.A.*, 2024 WL 6891019, at *2 (N.D. Ill. Mar. 13, 2024) ("A plaintiffs declaration asserting a fact on personal knowledge is enough to create a genuine issue of fact.").

Since there is a genuine dispute of fact as to whether Rico Lopez received and acknowledged the Handbook, the Court denies LRS's motion to compel arbitration. *See, e.g., Revels v. Super 8 by Wyndam*, 2023 WL 3627721, at *2 (N.D. Ill. May 24, 2023) (denying motion

9

to compel arbitration where parties' conflicting declarations created a factual dispute as to the existence of an arbitration agreement); *Katsis v. Midland Credit Mgmt., Inc.*, 2025 WL 3852406, at *4 (N.D. Ill. Jan. 31, 2025) (same); *Hoganberry v. Experian Info. Sols., Inc.*, 703 F. Supp. 3d 854, 862 (N.D. Ill. 2023) (same). Pursuant to Section 4 of the FAA, Rico Lopez is entitled to a hearing on this issue. *See Deputy*, 345 F.3d at 511 (citing 9 U.S.C. § 4)). The parties may conduct limited discovery on the existence of an agreement to arbitrate beforehand. *See, e.g., Hoganberry*, 703 F.Supp.3d. at 862; *Revels*, 2023 3627721, at *3.

## CONCLUSION

For the reasons set forth above, LRS's Motion to Compel Arbitration [10] is denied. The Court will enter a subsequent Order entering a discovery schedule and setting an evidentiary hearing on the limited issue of the existence of an arbitration agreement.

Virginia M. Kendall
United States District Judge

Date: August 6, 2026

10